IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

THE BURLINGTON INSURANCE        )        CIVIL 14-00151 LEK-KSC
COMPANY,                        )
                                )
          Plaintiff,            )
                                )
     vs.                        )
                                )
SANFORD'S SERVICE CENTER,       )
INC., SANFORD IWATA, and        )
FRANCISCO ABADILLA, JR.,        )
                                )
          Defendants.           )
_____ )


**ORDER GRANTING DEFENDANTS SANFORD'S SERVICE CENTER, INC. AND
SANFORD IWATA'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING
PLAINTIFF THE BURLINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY
JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

          Before the Court are: Defendants/Cross Defendants

Sanford Service Center, Inc. ("SSC") and Sanford Iwata's

("Iwata," collectively "the Sanford Defendants") Motion for

Partial Summary Judgment, filed on October 22, 2014 ("Sanford

Motion");[1] and Plaintiff The Burlington Insurance Company's

("Burlington") Motion for Summary Judgment or, in the

Alternative, Partial Summary Judgment, also filed October 22,

2014 ("Burlington Motion"). [Dkt. nos. 21, 24.] Burlington

filed its memorandum in opposition to the Sanford Motion on

November 10, 2014 ("Burlington's Memorandum in Opposition"), and

_____

          [1] On October 29, 2014, Defendant/Cross Claimant Francisco
Abadilla, Jr. ("Abadilla") filed a joinder to the Sanford Motion.
[Dkt. no. 27.]

the Sanford Defendants filed their reply on November 17, 2014
("Sanford Defendants' Reply"). [Dkt. nos. 29, 33.] The Sanford
Defendants filed their memorandum in opposition to the Burlington
Motion on November 10, 2014 ("Sanford Defendants' Memorandum in
Opposition") and Abadilla filed his opposition that same day
("Abadilla's Memorandum in Opposition"). [Dkt. nos. 30, 32.]
Burlington filed its reply on November 17, 2014 ("Burlington's
Reply"). [Dkt. no. 34.] These matters came on for hearing on
December 1, 2014. After careful consideration of the motions,
supporting and opposing memoranda, and the arguments of counsel,
the Sanford Motion is HEREBY GRANTED and the Burlington Motion is
HEREBY DENIED for the reasons set forth below.

### BACKGROUND

On March 27, 2014, Burlington filed its Complaint
against the Sanford Defendants and Abadilla (collectively,
"Defendants"), asserting diversity jurisdiction, and seeking
reimbursement from Iwata ("Federal Count I"), a declaratory
judgment that it has no duty to defend any of the Defendants
("Federal Count II"), and a declaratory judgment that it has no
duty to indemnify any of the Defendants for any judgment or
settlement ("Federal Count III"). In essence, the Complaint asks
this Court to determine whether Burlington has a duty to defend
Iwata in light of the law of the case in an underlying personal
injury case brought by Abadilla against Iwata in state court,

<u>Abadilla v. Iwata</u>, Civil No. 07-1-0036 (Hawai`i 3d Cir. 2007)

("the State Case").

## I. <u>Undisputed Facts</u>

The following facts are undisputed.

On December 13, 2004, Burlington issued Commercial
General Liability insurance policy number 223BW03872 ("the
Policy") covering the period from November 29, 2004 to
November 29, 2005. [Burlington's Response to Sanford's Service
Center, Inc.'s and Sanford Iwata's Separate and Concise Statement
of Facts in Supp. of Motion for Partial Summary Judgment
("Burlington Resp. CSOF"), filed 11/10/14 (dkt. no. 29-1), at
¶ 3.] The named insured on the policy was SSC. [Burlington's
Separate and Concise Statement of Material Facts and Supporting
Evidence in Supp. of Motion for Summary Judgment or, in the
Alternative, Partial Summary Judgment ("Burlington CSOF"), filed
10/22/14 (dkt. no. 24-2), Decl. of BJ Cleaver in Support of
Burlington Insurance Company's Motion for Summary Judgment or, in
the Alternative, Partial Summary Judgment ("Cleaver Decl."), Exh.
A (Policy) at 405.[2]]

On February 2, 2007, Abadilla filed the State Case.
[Sanford Defs.' Separate and Concise Statement of Facts in Supp.

---

[2] The Policy consists of multiple documents that are not
consecutively paginated, so the Court refers to the PageID# from
the court's Case Management/Electronic Case Files (CM/ECF) system
in discussing this exhibit.

of Motion for Partial Summary Judgment ("Sanford Defs. CSOF"),
filed 10/22/14 (dkt. no. 22), Decl. of Sanford Iwata ("Iwata
Decl."), Exh. A ("State Court Complaint").]  Then, on March 15,
2007, Abadilla filed his First Amended Complaint ("First Amended
State Court Complaint"), alleging that on or about May 17, 2005,
he was injured during the course of his employment at SSC.
Abadilla alleged that he was greasing an impactor machine owned
by SSC ("the Impactor") when, due to the machine's defective
mechanical condition, it exploded causing him severe injuries
("the Incident").  [Burlington CSOF at ¶ 1 (citing Request for
Judicial Notice in Support of Burlington Insurance Company's
Motion for Summary Judgment or, in the Alternative, Partial
Summary Judgment ("Burlington Request for Judicial Notice"),
filed 10/22/14 (dkt. no. 24-5), Exh. 1 (First Amended State Court
Complaint) at ¶ 7); Sanford Defendants' Responsive Concise
Statement of Facts in Support of Opp. to Plaintiff's Motion for
Summary Judgment or, in the Alternative, Partial Summary
Judgment, Filed October 22, 2014 [Dkt. 24] ("Sanford Defs. Resp.
CSOF"), filed 11/10/14 (dkt. no. 31), at ¶ 1.]  At the time of
the Incident, Iwata was the president and general manager of SSC,
and his duties included serving as a supervisor, mechanic, job
estimator, laborer, trainer, safety compliance officer, equipment
operator, and driver.  [Burlington CSOF at ¶¶ 2-3; Sanford Defs.
Resp. CSOF at ¶¶ 2-3; Burlington Resp. CSOF at ¶¶ 12-13.]

The First Amended State Court Complaint consisted of claims for: negligence and joint and several liability for knowledge or constructive knowledge that the Impactor was unfit for use and unsafe ("State Count I"); Doe Defendants failed to implement adequate safety and training in the use of heavy machinery ("State Count II"); Iwata was negligent in failing to fulfill his responsibilities to properly supervise Abadilla, inspect and repair the Impactor, and ensure proper safety precautions were followed in repairing the Impactor ("State Count III"); strict liability ("State Count IV"); and Iwata was reckless and grossly negligent in performing his duties, and thus liable for punitive damages ("State Count V"). [First Amended State Court Complaint at pgs. 2-7.]

Iwata sent the summons and complaint to Burlington. [Burlington Resp. CSOF at ¶ 9; Iwata Decl. at ¶ 7.] Burlington initially sent a letter, dated March 7, 2007, to Iwata, stating it would not defend or indemnify him related to the State Case. [Burlington Resp. CSOF at ¶ 10; Iwata Decl., Exh. B ("3/7/07 Burlington letter to Iwata").] On April 17, 2007, counsel for Iwata in the State Case, Gregory Markham, Esq., wrote to Burlington requesting that it reconsider its position. [Burlington Resp. CSOF at ¶ 14; id., Decl. of Gregory Markham ("Markham Decl."), Exh. D ("4/17/07 Markham letter to Burlington").] On May 29, 2007, Burlington, represented by

William Morison, Esq., accepted the defense of Iwata under a reservation of rights. [Burlington Resp. CSOF at ¶ 15; Markham Decl., Exh. E ("5/29/07 Morison letter to Markham").]

On April 28, 2009, the circuit court entered judgment in favor of Iwata on all counts against him. [Burlington CSOF at ¶ 6; Sanford Defs. Resp. CSOF at ¶ 6; Burlington Request for Judicial Notice, Exh. 4 (<u>Abadilla v. Iwata et al.</u>, Civil No. 07-1-0036, Final Judgment (Hawai`i 3d. Cir. April 28, 2009) ("Circuit Court Judgment")).] On January 31, 2013, the Intermediate Court of Appeals ("ICA") vacated the judgment on State Counts I, III, and V, because the Hawai`i worker's compensation law, which was the basis for the Circuit Court Judgment, does not preempt liability for injuries by co-employees for willful and wanton misconduct. [Burlington CSOF at ¶ 7; Sanford Defs. Resp. CSOF at ¶ 7; <u>Abadilla v. Iwata</u>, No. 29851, 2013 WL 377301 (Hawai`i Ct. App. Jan. 31, 2013), *as corrected* (Mar. 15, 2013) ("<u>Abadilla I</u>").] On August 19, 2013, the Hawai`i Supreme Court remanded the case to the ICA to determine if Abadilla's other theories of liability and Iwata's other capacities (beyond willful and wanton injuries by co-employees) warranted summary judgment. [Burlington CSOF at ¶ 8; Sanford Defs. Resp. CSOF at ¶ 8; <u>Abadilla v. Iwata</u>, 130 Hawai`i 300, 308 P.3d 1231 (Hawai`i 2013) ("<u>Abadilla II</u>").]

On September 30, 2013, the ICA issued a summary
disposition, in which it clarified that the sole remaining claim
against Iwata was as a co-employee, for engaging in willful and
wanton misconduct. [Burlington CSOF at ¶ 8; Sanford Defs. Resp.
CSOF at ¶ 8; <u>Abadilla v. Iwata</u>, 2013 WL 5442998 (Hawai`i Ct. App.
2013) ("<u>Abadilla III</u>").[3]]

## II. <u>Disputed Issues</u>

While the parties are in agreement as to the foregoing
facts, they dispute: (1) which claims remain in the State Case;
and (2) the extent of Burlington's coverage as to those claims.
These disputes turn on the state courts' application of worker's
compensation preemption, and insurance interpretation.

### STANDARD

## I. <u>Worker's Compensation Preemption</u>

The exclusivity provision of the Hawai`i worker's
compensation law, Haw. Rev. Stat. Chapter 386, provides that
"[t]he rights and remedies herein granted to an employee . . . on
account of a work injury suffered by the employee shall exclude
all other liability of the employer to the employee[.]" Haw.
Rev. Stat. § 386-5. However, Chapter 386 provides an exception
as to the liability of third parties, in particular, as to

---

[3] The Sanford Defendants included <u>Abadilla I</u>, <u>Abadilla II</u>,
and <u>Abadilla III</u> as Exhibits F through H to the Markham
Declaration and Burlington included the opinions as Exhibits 2, 3
and 5 to their Request for Judicial Notice.

willful and wanton misconduct:

> When a work injury for which compensation is
> payable under this chapter has been sustained
> under circumstances creating in some person other
> than the employer or another employee of the
> employer acting in the course of his employment a
> legal liability to pay damages on account thereof,
> the injured employee or his dependents
> (hereinafter referred to collectively as the
> employee) may claim compensation under this
> chapter and recover damages from such third
> person.

> . . . .

> Another employee of the same employer shall not be
> relieved of his liability as a third party, if the
> personal injury is caused by his wilful and wanton
> misconduct.

Haw. Rev. Stat. § 386-8. The Hawai`i Supreme Court has referred

to this as the "statutory 'wilful and wanton misconduct'

exception to the co-employee immunity provisions of Hawai`i's

workers' compensation scheme." _Iddings v. Mee-Lee_, 82 Hawai`i 1,

3, 919 P.2d 263, 265 (1996) (footnote omitted).

## II. __Duty to Defend__

Regarding the duty to defend, the Hawai`i Supreme Court

has held:

> [T]he duty to defend rests primarily on the
> possibility that coverage exists. This
> possibility may be remote but if it exists, the
> insurer owes the insured a defense. All doubts as
> to whether a duty to defend exists are resolved
> against the insurer and in favor of the insured.

> Accordingly, in connection with the issue of
> its duty to defend, [the insurer bears] the burden
> of proving that there [i]s no genuine issue of
> material fact with respect to whether a

> possibility exist[s] that [the insured] would
> incur liability for a claim covered by the
> polic[y].  In other words, [the insurer is]
> required to prove that it would be impossible for
> the [claimant] to prevail against [the insured] in
> the underlying lawsuit[ ] on a claim covered by
> the policies.  Conversely, [the insured's] burden
> with respect to its motion for summary judgment
> [i]s comparatively light, because it ha[s] merely
> to prove that a possibility of coverage exist[s].

Tri-S Corp. v. W. World Ins. Co., 110 Hawai`i 473, 488, 135 P.3d
82, 97 (2006) (some alterations in Tri-S) (quoting Dairy Rd.
Partners v. Island Ins. Co., Ltd., 92 Hawai`i 398, 412-13, 992
P.2d 93, 107-08 (2000)).

On the other hand, the Hawai`i Supreme Court has also
held that, "'if the plaintiff's complaint against the insured
alleged facts which would have supported a recovery covered by
the policy, it was the duty of the defendant to undertake the
defence [sic], **until it could confine the claim to a recovery
that the policy did not cover**.'"  Commerce & Indus. Ins. Co. v.
Bank of Hawaii, 73 Haw. 322, 326-27, 832 P.2d 733, 736 (1992)
(emphasis added) (alteration in Commerce & Indus) (quoting Lee v.
Aetna Casualty & Sur. Co., 178 F.2d 750 (2d Cir. 1949) (Hand,
J.)).  That is, the duty to defend only extends to "where
coverage is applicable."  Nautilus Ins. Co. v. Lexington Ins.
Co., 132 Hawai`i 283, 294, 321 P.3d 634, 645 (2014) (citations
omitted).

**DISCUSSION**

9

The crux of Burlington's argument is that the ICA's decision in <u>Abadilla III</u> extinguished its duty to defend because the ICA limited any liability of Iwata to his capacity as co-employee, which is mutually exclusive with his role as executive – the sole capacity in which Iwata is covered by the Policy. The Sanford Defendants argue that Burlington misinterprets the state court decisions as precluding executive liability when in fact they left open that very possibility, since the decisions focused solely on worker's compensation preemption in styling the remaining claims in terms of "co-employee" liability.

Upon closer examination, the Court finds the Sanford Defendants' argument persuasive. While the Hawai`i courts in the State Case clearly limited Abadilla's claims against Iwata to purported wilful and wanton conduct by a co-employee, this Court reads those decisions as focusing on the issue of preemption and not insurance coverage. As such, it does not interpret the ICA's decision in <u>Abadilla III</u> as precluding a trial court finding that Iwata was wilful and wanton in breaching his duties to Abadilla as a supervisor and executive, and thus this case falls squarely within <u>Tri-S</u>, which found a duty to defend an executive in an analogous factual situation.

**I.   Law of the Case**

After the circuit court granted summary judgment on all claims against Iwata (State Counts I, III, IV and V), the ICA

10

vacated the judgment against Iwata in its entirety as to State

Counts I, III and V.  _Abadilla I_, 2013 WL 377301, at *7.  The ICA

explicitly focused its decision on the issue of whether Hawaii's

worker's compensation law preempted all of the claims against

Iwata, and whether there were genuine issues of material fact as

to whether Iwata engaged in wilful and wanton misconduct.  It

summarized:

> Under Hawai`i's workers' compensation law, an
> employee is precluded from suing a co-employee for
> injuries caused by negligence, but can sue a
> co-employee for injuries caused by wilful and
> wanton misconduct.  The principal issue in this
> appeal is whether there were genuine issues of
> material fact regarding whether Abadilla's
> injuries were caused by Iwata's wilful and wanton
> misconduct.  As explained below, we conclude that
> the answer to this question is yes.  We further
> conclude that there were genuine issues of
> material fact with respect to Iwata's punitive
> damages claim.  Accordingly, we hold that the
> Circuit Court erred in its grant of summary
> judgment in favor of Iwata on Counts I, III, and V
> of the First Amended Complaint, which Abadilla
> challenges on appeal.  We vacate the entry of
> judgment against Abadilla on Counts I, III, and V,
> and we remand the case for further proceedings.

_Id._ at *1; _see also_ _id._ at *4 ("The key issue in this appeal is

whether there were genuine issues of material fact concerning

whether Abadilla was injured as the result of Iwata's wilful and

wanton misconduct.").

More specifically, the ICA interpreted Hawai`i Supreme

Court case law as allowing an exception to worker's compensation

immunity under § 386-8 against "co-employees" for wilful and

wanton misconduct, id. at *4-6 (discussing Iddings), and found

that the exception applied to Iwata as a "co-employee." Id. at

*4 ("There is no dispute that Abadilla sustained a work-related

injury and that Iwata was Abadilla's co-employee.").  However,

the ICA made no limitations as to which theories of liability

Abadilla could pursue in the trial court.  Further, it vacated

the circuit court's judgment for Iwata entirely as to State

Counts I, III, and V, without clarifying that those counts were

preempted as to certain theories of liability, such as basic

negligence.  Id. at *6.

On appeal, the Hawai`i Supreme Court took issue with

the ICA's broad remand order and singular focus on the wilful and

wanton exception, in particular, in light of Iwata's challenges

to other potential theories of liability.  In the concluding

section of Abadilla II, Section IX, the Hawai`i Supreme Court

held:

> The [trial] court entered summary judgment
> orders on Counts I, III and V.  Accordingly, the
> court orders granted summary judgment for
> Defendant on all theories of liability and in all
> capacities alleged in the amended complaint with
> respect to the said counts.  In its holding, the
> ICA vacated the summary judgment orders in their
> entirety.  Abadilla [I], 2013 WL 377301, at *7.
> However, the ICA only decided that there were
> genuine issues of material fact regarding the
> alleged wilful and wanton conduct of Defendant in
> his capacity as a co-employee.  Presumably, this
> is because the ICA determined that under Iddings,
> HRS § 386-8 allowed actions against a co-employee
> for wilful and wanton misconduct.  Id. at *5, 919
> P.2d 263.

Hence, the ICA did not decide whether genuine issues of material fact existed or not regarding the **other theories of liability alleged and other capacities in which Defendant acted**, as alleged in the amended complaint.  Yet, the ICA vacated the entirety of the orders granting summary judgment on Counts I and III.  <u>See</u> <u>id.</u>, at *7.  In doing so, the ICA did not address, for example, Defendant's argument that he was not liable as an officer or as a supervisor for furnishing a safe place to work and reasonably safe machinery, or that there was no expert testimony that the alleged acts of Defendant caused the Impactor to malfunction.

2013 WL 4458874, at *11 (alterations and emphasis added) (footnote omitted).  Burlington contends that the reference to the "other theories of liability alleged and other capacities in which Defendant acted" refers to Iwata's executive functions, as opposed to his role as a co-employee who worked side-by-side with Abadilla.  However, a close reading of <u>Abadilla II</u> as a whole shows that the Hawai`i Supreme Court was referring to specific issues raised by Iwata on appeal and discussed more fully in Sections VI, VII and VIII of the opinion.

For instance, in Section VI, the supreme court addressed Iwata's challenges to the ICA's decision regarding State Count I, that Iwata knew or should have known that the Impactor was unfit for use.  Iwata argued that he could not be liable because SSC, and not he, owned and possessed the Impactor

and the land.[4]  The supreme court held that the ICA had not made clear findings on the underlying facts regarding ownership and possession of the Impactor, or whether such a theory of liability could still be pursued against Iwata as an owner.  Id. at *8-9. Thus, the ICA had left open the claim, for instance, that Iwata could be liable for negligence as the owner of the Impactor.

Similarly, also regarding State Count I, Iwata argued that § 386-8 exempted him from liability for a claim of simple negligence as a "co-employee," and thus the ICA erred in allowing State Count I to withstand preemption in its entirety.  The supreme court rejected this argument, stating, "[t]o the contrary, the ICA held that Defendant, as a co-employee of Plaintiff, was protected from liability based on a theory of negligence."  Id. at *9 (citation omitted).  It continued:

> However, the ICA made no separate determination as to whether a genuine issue of material fact existed regarding whether Defendant was liable to Plaintiff based on a theory of **negligence** in a capacity other than that as co-employee, such as President of SSC or owner of the land where the incident occurred.

Id. (emphasis added).  Thus, the Hawai`i Supreme Court held that the ICA had not determined whether simple negligence under Count I remained against Iwata as president of SSC or owner of

---

[4] In Section VII, the supreme court analyzed Iwata's challenges to State Count III and made specific conclusions as to that count; and in Section VIII it reviewed challenges to State Count V.  For purposes of this discussion, it is not necessary to analyze all of the detailed holdings in Sections VII and VIII.

the land.[5]

In Section IX, including the excerpt set out above, the Hawai`i Supreme Court summarized and referred to these specific holdings from the body of the opinion. Consistent with that reading, it concluded: "Therefore, the case is remanded to the ICA to decide, wilful and wanton liability aside, 1) what other theories of liability, if any, were subject to summary judgment and 2) in what capacities, that of co-employee aside, Defendant was entitled to summary judgment, if any." Id. at *11. In the context of the opinion as a whole, the Hawai`i Supreme Court was focusing the ICA on the specific holdings it had reached regarding arguments that Iwata made on appeal and the court addressed in Sections VI through VIII.

This is consistent with how the ICA interpreted Abadilla II. In Abadilla III, the ICA explained that the supreme court, remanded,

---

[5] The Court is aware that, in this one instance, the supreme court did make a distinction between the capacity of Iwata as president of SSC and as a co-employee. Burlington argues that this distinction should be attributed to all discussions of co-employee liability in the ICA and supreme court decisions. The Court rejects this argument. First, there is no textual support that the Hawai`i Supreme Court meant to apply this distinction to all claims and not just to the claim for simple negligence for furnishing a dangerous tool unfit for use. More important, even if the supreme court meant the distinction to stand across claims, there is no indication that the ICA meant to incorporate it. In fact, as discussed below, the ICA expressly rejected this distinction as to the wilful and wanton claim and allowed State Counts I and III to proceed against Iwata in his officer and supervisory capacities.

the case back to this court "to decide, wilful and
wanton liability aside, 1) what other theories of
liability, if any, were subject to summary
judgment and 2) in what capacities, that of
co-employee aside, Defendant was entitled to
summary judgment, if any." [Abadilla II, 2013 WL
4458874, at *11.] The supreme court also stated
that in Abadilla I, this court did not address:
(1) Iwata's "argument that he was not liable as an
officer or as a supervisor" for failing to provide
"a safe place to work and reasonably safe
machinery," or (2) whether expert testimony was
necessary on the issue of causation at the summary
judgment stage. Id.

2013 WL 5442998, at *1. It understood its charge as to clarify

Abadilla I in three ways, which it addressed in three separate

sections (A, B and C).[6] First, consistent with this Court's

reading of Abadilla II, it ruled out all theories of liability

other than wilful and wanton conduct of a co-employee:

The Circuit Court properly granted summary
judgment on all theories of liability contained in
Counts I, III, and V of the First Amended
Complaint, except for liability based on
Abadilla's claim that Iwata, in his capacity as a
co-employee, engaged in wilful and wanton
misconduct that caused injury to Abadilla and also
justifies the award of punitive damages.

Id.

---

[6] If Burlington takes issue with how the ICA interpreted
Abadilla II, it is free to challenge that interpretation in state
court. This Court's role is to interpret, in light of Abadilla
III, whether Burlington still has a duty to defend. This Court
does not have jurisdiction to second guess a state appellate
decision interpreting a state supreme court remand order applying
state law.

Second, within the wilful and wanton co-employee claim, it rejected the argument made by Iwata on appeal in state court – and the basis for the Burlington Motion – that actions taken by an employee that are supervisory or executive in nature cannot give rise to liability within the co-employee exception in § 368-8: "We reject Iwata's argument that his liability as a co-employee cannot be based on actions he took as a supervisor **or officer** in allegedly engaging in wilful and wanton misconduct that created an unsafe work place and caused Abadilla to suffer serious injury from the use of a dangerously unsafe machine." Id. at *2 (emphasis added). The ICA interpreted Iddings to exempt from preemption claims of wanton and wilful misconduct by an officer, in addition to a supervisor.[7]

Third, but not material to this Court's Order, the ICA held that there were genuine issues as to causation, even without expert testimony, and the claims should stand. Abadilla III, 2013 WL 5442998, at *3. Thus, without limiting co-employee liability to any specific conduct by Iwata, it stated that, "[o]n remand, Abadilla is entitled to pursue his claim that Iwata, in

_____

[7] In Iddings, the Hawai`i Supreme Court held that a psychiatric nurse, who was injured by a patient, could pursue a claim of wilful and wanton misconduct for acts and omissions of the doctor in his role as a supervisor in not controlling the patient population and the layout of the ward. 82 Hawai`i at 21, 919 P.2d at 283. Again, it is not for this Court to determine whether the ICA's interpretation of Iddings in Abadilla III – to include executive responsibilities – was correct. See supra n.5.

his capacity as a co-employee, engaged in wilful and wanton misconduct that caused injury to Abadilla and also justifies the award of punitive damages."  Id.

Based on the foregoing discussion, the Court FINDS that the ICA's decision in Abadilla III does not foreclose a finding of liability in the State Court Case based on acts taken by Iwata in an executive, officer, or supervisory capacity.[8]

## II.  **Applicable Coverage Law**

The only question that remains is whether there is a "possibility that coverage exists."  See Tri-S, 110 Hawai`i at 488, 135 P.3d at 97.  Tri-S, which Burlington concedes is factually on point, [Burlington Mem. in Opp. at 3,] clearly shows that such a possibility exists here.  In that case, the Hawai`i Supreme Court – reviewing a policy nearly identical to the Policy here – held that the circuit court did not err in finding that an insurer, Western World Insurance Co. ("WWI"), had a duty to defend an individual, Karl Milton Taft, who was sued at least in part as an executive and supervisor of a small company for the

---

[8] The Court further rejects Burlington's arguments, made in its memoranda and at the hearing, that such an interpretation would countermand the worker's compensation scheme, or that the case law the ICA applied is not analogous to the facts of this case since SSC is a small company.  The cases the ICA did cite, such as Iddings, address the former issue.  As to the latter, if anything, the small size of SSC makes it more likely that Iwata could be found liable for executive functions.  The First Amended State Court Complaint alleges that Iwata was intimately involved in the decisions and actions leading to the Incident, which he likely would not have been in a large, hierarchical business.

wrongful death of Charles L. Rapoza, Jr.  Similar to Iwata, Taft

was "the proprietor of a small business, wore multiple, non-

mutually exclusive hats at Tri-S, including those of owner,

executive officer, manager, and employee."  Tri-S, 110 Hawai`i at

495, 135 P.3d at 104.  And similar to the issue in this case, the

Hawai`i Supreme Court explained that, "the question is, which hat

was Taft wearing in connection with the alleged breach of duty

that resulted in Rapoza's death?"  Id.

> The supreme court held,
>
>> under Dairy Road Partners, which demands only that
>> the possibility of coverage be established for an
>> insured to prevail on a motion for summary
>> judgment as to the insurer's duty to defend, the
>> legal question at issue can be distilled still
>> further to, "Was it possible that Taft's alleged
>> breach of duty occurred in his capacity as an
>> executive officer?"  The allegations in the
>> complaint, naming Taft as both president and
>> manager of Tri-S, raise the possibility that Taft
>> could have been found liable in his capacity as
>> president.  Moreover, Taft's affidavit stating
>> that, as an executive officer, he was responsible
>> for Tri-S policies and practices regarding
>> drilling and safety also raises the possibility
>> that Rapoza's death could be characterized as the
>> result of a breach of Taft's duty, in his capacity
>> as executive officer, to design and execute
>> corporate policy, rather than a breach of his
>> duty, as a supervisory co-employee, to carry out
>> corporate policy.
>>
>> On the other hand, it is possible, if not
>> likely, that a court or jury would conclude that
>> Taft breached his duties as a manager (i.e.,
>> supervisory co-employee) rather than as an
>> executive officer, as WWI notes, just as it is
>> possible, if not likely, that a court might rule
>> that the duty to provide a safe work place is a
>> non-delegable duty owed by the employer rather

19

than the co-employee, and thus Taft could not be
liable to Rapoza. It is also possible that a jury
would conclude that Taft was at most negligent
rather than reckless, and thus not liable to the
Rapoza Estate under Iddings. However, neither the
allegations in the complaint nor any evidence
adduced by WWI foreclose the possibility that Taft
could be found liable for a covered claim (i.e.,
non-intentional misconduct in his capacity as an
executive officer). As such, WWI had a duty to
defend Taft despite any unlikelihood, as contended
by WWI, that Taft would be found liable in the
underlying suit on a covered claim. See Commerce
& Indus. Ins. Co. v. Bank of Hawaii, 73 Haw. 322,
327, 832 P.2d 733, 736 (1992) ("An insurer has a
duty to proceed in defense of a suit, at least to
the point of establishing that liability upon
which plaintiff was relying was in fact not
covered by the policy, and not merely that it
might not be." (Quoting 7C J. Appleman, Insurance
Law and Practice § 4683.01 at 69 (Berdal ed.
1979).)) (Footnote omitted.). Because WWI
submitted no evidence to rebut Taft's affidavit
and prove that it would be impossible for the
Rapoza Estate to prevail in the underlying suit on
the basis that Taft breached his duty as an
executive officer, the circuit court did not err
in granting summary judgment in favor of TSC-Taft
as to WWI's duty to defend.

Id. at 495-96, 135 P.3d at 104-05 (alterations in Tri-S)

(footnotes and some citations omitted). The Court is confronted

with the nearly identical issues here, which Burlington admits in

its memorandum in opposition to the Sanford Motion:

Based on the Tri-S holding, defendants argue
that Iwata was an "executive officer" within the
meaning of Burlington's policy, and that Iwata was
an insured with respect to his duties as an
executive officer. **There is no dispute as to
that.** Where their argument collapses is in
asserting that the allegations of Abadilla's First
Amended Complaint in the personal injury action
leave open the possibility that Iwata could be
liable for breaching his duties as [SSC's]

President.  **Those allegations cannot be considered in isolation, ignoring the plain holding of [Abadilla III].  The only claim that remains in the personal injury action is one for which Iwata is not an insured.**  Thus, Burlington has no duty to defend him.  [T]here is no duty to defend when there is no potential for coverage . . . .  As the Hawai`i Supreme Court stated in <u>Dairy Rd. Partners v. Island Ins. Co.</u>, 92 Haw. 398, 424, 992 P.2d 93, 119 (2000) (quoting <u>Liberty Mut. Ins. Co. v. Superior Court</u>, 58 Cal. App. 4th 617, 623, 68 Cal. Rptr. 2d 219, 223): "An insurer's duty to defend continues only so long as the possibility of [a] duty to indemnify remains alive.  Once that possibility is extinguished by court order, the duty to defend ceases."

> Even if, as defendants contend based on <u>Tri-S</u>, Iwata is only an executive officer and not an employee, he still would not be an insured for the only claim that may be pursued against him, i.e., acting as a co-*employee*.

[Burlington Mem. in Opp. at 4-5 (some alterations in original) (bold emphases added; italics in original) (some citations and internal quotation marks omitted).]  Burlington argues that the only material difference between this case and <u>Tri-S</u> is the limiting impact of <u>Abadilla III</u>.  However, as the Court described in Section I, *supra*, the Court rejects this interpretation of <u>Abadilla III</u>.  Thus, Burlington's argument here amounts to a concession that <u>Tri-S</u> controls.  The Court thus FINDS that Iwata is covered in his executive capacity by the Policy.  Since the Court has found that <u>Abadilla III</u> does not limit liability against Iwata in his executive capacity and Iwata is covered as an "insured" in his executive capacity by the Policy, there

exists the possibility of coverage.  Thus, the Court also FINDS
that Burlington has a continuing duty to defend Iwata.

**III.  <u>Summary</u>**

Since the Court has found that Burlington has a
continuing duty to defend, it GRANTS the Sanford Motion and
DENIES the Burlington Motion as to that duty.  The Court thus
GRANTS summary judgment on Count II in favor of Defendants.

Further, since there remains a duty to defend, the
Court FINDS that Burlington is entitled to neither reimbursement
by Iwata, nor indemnification by any of the Defendants.  The
Court thus GRANTS the Sanford Motion and DENIES the Burlington
Motion accordingly, and GRANTS summary judgment on Counts I and
III in favor of Defendants.  <u>See</u> Local Rule LR56.1(i) ("If a
party moves for summary judgment and the record establishes as a
matter of law that another party is entitled to summary judgment
against the moving party, the court, in the court's discretion,
may enter summary judgment against the moving party after
providing that party with oral or written notice and an
opportunity to be heard."); <u>see also</u> Fed. R. Civ. P. 56(f).

<b><u>CONCLUSION</u></b>

On the basis of the foregoing, Defendants/Cross
Defendants Sanford Service Center, Inc. and Sanford Iwata's
Motion for Partial Summary Judgment, filed October 22, 2014, is
HEREBY GRANTED in its entirety; and Plaintiff The Burlington

Insurance Company's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment, also filed October 22, 2014 is HEREBY DENIED in its entirety.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, December 16, 2014.



_/s/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States District Judge

THE BURLINGTON INSURANCE COMPANY VS. SANFORD'S SERVICE CENTER, INC., ET AL; CIVIL 14-00151 LEK-KSC; ORDER GRANTING DEFENDANTS SANFORD'S SERVICE CENTER, INC. AND SANFORD IWATA'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND DENYING PLAINTIFF THE BURLINGTON INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT